UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY BRADLEY and TERESA ELDRIGE,<br><br>          Plaintiffs,<br><br>     v.<br><br>THE ATLANTIC CITY BOARD OF EDUCATION et al.,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-3075<br>(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

PRESS & TAGLIALATELLA, LLC
By:  Richard L. Press, Esq.
23 East Black Horse Pike
Pleasantville, New Jersey 08232
     Counsel for Plaintiffs


MARKS, O'NEILL, O'BRIEN & COURTNEY, PC
By:  Frances Wang Deveney, Esq.
6981 North Park Drive, Suite 300
Pennsauken, New Jersey 08109
     Counsel for Defendants Atlantic City Board of Education and
     Fredrick Nickles


DECOTIIS, FITZPATRICK, GLUCK & COLE, LLP
By:  George Gabriel Frino, Esq.
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
     Counsel for Defendant Barry Caldwell


**IRENAS**, Senior District Judge:

In a prior opinion denying the Defendants' motions to dismiss,

this Court observed that the poorly drafted and factually muddled

Complaint at least alleged sufficient factual information to plead a cause of action under multiple overlapping legal theories.[1] Those legal theories have morphed (or have simply been abandoned) over the course of this litigation.

All of the Defendants have now moved for summary judgment, and in so doing, have attempted in their opening briefs to precisely identify the various claims and legal theories Plaintiff[2] now asserts. Plaintiff's opposition brief has subsequently made clear, however, that her principal claims are that Defendants retaliated against her after she filed a Notice of Tort Claim against them pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:8-4; and that Defendant Caldwell tortiously recorded a telephone conversation between himself and Plaintiff. For the reasons that follow, the Defendants' Motions for Summary Judgment on liability will be granted.[3]

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2] This suit was originally brought by Mary Bradley and Teresa Eldrige. Eldridge voluntarily dismissed her claims, leaving Bradley as the only Plaintiff.

[3] Three summary judgment motions are pending: (1) Defendant Caldwell's Motion for Summary Judgment; (2) Defendants Atlantic City Board of Education and Superintendent Nickles' Motion for Summary Judgment as to liability; and (3) Defendant Nickles' Motion for Summary Judgment as to punitive damages. Because the Court will grant summary judgment in favor of Defendants on all liability issues, the Court will dismiss as moot Nickles' punitive damages summary judgment motion. All further references to "Defendants' Summary Judgment Motions" refer only to the liability motions.

## I.

Plaintiff has been employed as a secretary by Defendant Atlantic City Board of Education since 1992.  For many years, she was secretary to Defendant Barry Caldwell, Director of Operations for the Board of Education.  Defendant Fred Nickles is the Superintendent of the Board of Education.

In the spring of 2006, rumors were circulating among Board of Education employees that Caldwell had sexually harassed other employees.[4]  Caldwell was very disturbed by these rumors and began asking other Board of Education employees, many of whom were his subordinates, to sign notarized certifications stating that any rumors of inappropriate conduct were untrue, and that Caldwell had always acted professionally.  (See, e.g., Pl's Ex. U)  Plaintiff and other employees refused to sign such certifications.

Continuing his crusade to clear his name, sometime in April, 2006, Caldwell surreptitiously recorded a telephone conversation he had with Bradley, his secretary at the time.  Caldwell called Bradley on her home phone.[5]  Their telephone conversation occurred while Bradley was entering her home after work.  In that telephone

---

[4]  It seems that at least some of the rumors had their genesis in a lawsuit brought against the Atlantic City Board of Education by a female employee who alleged that Caldwell had offered her a better parking spot in exchange for sexual favors. The lawsuit was settled.

[5]  At the time of the phone call (and Plaintiff's deposition), Caldwell lived in the home directly behind Plaintiff's home.  (Pl. Dep. at p. 187)

conversation, Caldwell asked Bradley to confirm that he had never acted inappropriately toward her. (Frino Decl. Ex. B)  Bradley stated that he "never" harassed her. (Id.)

However, on November 29, 2007, Bradley filed a Notice of Tort Claim with the Board of Education asserting, among other somewhat vague allegations[6], that in 2002 Caldwell "sexually harassed" her by "expos[ing] himself" to her on two occasions. (Pl's Ex. DD)

On December 21, 2007, Caldwell and his wife filed a defamation suit against Bradley and her lawyer, alleging that Bradley's sexual harassment accusations in the Tort Claim Notice were false and defamatory. (Frino Decl. Ex. D)  The complaint further alleges that Bradley and her lawyer gave the Tort Claim Notice to the *Atlantic City Press*, which published the accusations in a news article on December 5, 2007. (Id.)  Plaintiff denies giving the Tort Claim Notice to the newspaper.

Plaintiff also states that since she filed her Tort Claim Notice she has "not had proper [office] supplies to perform [her] job." (Bradley Cert. ¶ 13)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions,

---

[6]  The other general allegations (apparently not directed toward Caldwell specifically) include "nepotism" and "corruption," and "breach of the Board of Education's own payroll ordinances, policies, and procedures." (Pl's Ex. DD)

4

answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a
motion for summary judgment, the Court must construe the facts and
inferences in a light most favorable to the non-moving party.
*Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.
1986).  The role of the Court is not "to weigh the evidence and
determine the truth of the matter, but to determine whether there
is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986).


## III.

     As noted previously, the Complaint is not entirely clear as to
the claims asserted.  Plaintiff's brief in opposition to the
motions for summary judgment concedes that "the New Jersey
[Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to
-8] claim under the facts of this case cannot be sustained."  (Pl's
Opp. Br. at 71)  The brief also states that Plaintiff does not
oppose the motions for summary judgment with regard to her New
Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, claim.  Summary
judgment will be granted as to the CEPA claim and the New Jersey
Civil Rights Act claim.

     According to Plaintiff, the remaining claims to be addressed

are: (1) the 42 U.S.C. § 1983 claim-- retaliation in violation of the First Amendment; and (2) the claims arising out of Caldwell's recording of his telephone conversation with Bradley.  The Court will also address Plaintiff's Law Against Discrimination, N.J.S.A. 10:5-12d, claim, even though Plaintiff makes no legal argument as to that claim.[7]

### A.

Plaintiff asserts that filing a Tort Claims Notice is activity protected by the First Amendment[8] and that Caldwell unlawfully retaliated against her when he filed his defamation suit. Plaintiff also asserts that the Board of Education is liable for Caldwell's actions.

Section 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

---

[7] Similarly, all parties apparently ignore Count 6 of the Complaint, which seems to assert a claim for breach of express or implied contract.  Even after discovery, the Court cannot ascertain what contract is alleged to be at issue in this case. Summary judgment will be granted on Count 6.

[8] As discussed *infra* at Section III. C., the Court holds that filing the particular Tort Claim Notice in this case was not protected activity under New Jersey's Law Against Discrimination. Thus, there is at least a question whether such action is protected under the First Amendment.  However, because the § 1983 claim fails on other grounds, the Court avoids the constitutional question and assumes without deciding that filing the Tort Claim Notice at issue in this case was protected by the First Amendment.

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.


### (1)

The statute only provides a remedy for deprivations of rights that occur under color of law.

It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color of state law, his act must entail 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'

*Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).[9]

On this record, a reasonable factfinder could only conclude that Caldwell was not acting under color of law when he and his wife filed their defamation lawsuit against Plaintiff and her attorney. Any private person may file a defamation lawsuit against

---

[9]  *See also Third Circuit Model Jury Instructions for Civil Rights Claims Under Section 1983*, Model Instruction 4.4.2 ("For an act to be under color of state law, the person doing the act must have been doing it while clothed with the authority of the state, by which I mean using or misusing the authority of the state. You should consider the nature of the act, and the circumstances under which it occurred, to determine whether it was under color of state law.") *available at* http://www.ca3. uscourts.gov/civiljuryinstructions/Final-Instructions/june2010/4_ Chap_4_2010_June.wpd.

another private person.  Caldwell had no special access to the
Superior Court of New Jersey, where he filed his complaint.  In
filing and pursuing his lawsuit, Caldwell did not exercise or
misuse power derived by the authority of the state.  The undisputed
fact that Caldwell's wife was also a plaintiff in the defamation
suit underscores this point.  Because the record does not support a
conclusion that Caldwell acted under color of law when he filed his
defamation suit, he is entitled to summary judgment on the § 1983
claim.

### (2)

The § 1983 claim against the Board of Education fails because
nothing in the record supports a conclusion that the Board of
Education ratified Caldwell's decision to file a defamation suit
against Plaintiff.  *See LaVerdure v. County of Montgomery,* 324 F.3d
123, 125-126 (3d Cir. 2003)("'If the authorized policymakers
approve a subordinate's decision and the basis for it, their
ratification would be [a basis for imposing municipal
liability.]'") (quoting *City of St. Louis v. Praprotnik*, 485 U.S.
112, 123 (1988)).[10]  Indeed, the only relevant evidence with regard

---

[10]  *See also Third Circuit Model Jury Instructions for Civil
Rights Claims Under Section 1983*, Model Instruction 4.6.1 ("the
second way for plaintiff to show that supervisor is liable for
subordinate's conduct is to show that supervisor had actual
knowledge of subordinate's violation of plaintiff's rights and
that supervisor acquiesced in that violation.  To 'acquiesce' in
a violation means to give assent to the violation.  Acquiescence
does not require a statement of assent, out loud:  acquiescence

to this issue is Superintendent Nickles' testimony that he was not aware of Caldwell's defamation suit and did not authorize Caldwell to file the suit.  (Nickles Dep. at p. 29)

The Board of Education's Motion for Summary Judgment will be granted as to the § 1983 claim.


### (3)

To the extent that Plaintiff asserts that the retaliatory action is not the defamation suit but rather that she was denied office supplies, was not allowed internet access, had duties taken away from her, and had her office moved, these actions, even when considered collectively in the context of this case, do not constitute an adverse employment action sufficient to sustain a First Amendment retaliation claim.[11]

Moreover, even if the asserted adverse employment actions were actionable, the bulk of them occurred prior to Plaintiff filing her Tort Claim Notice, therefore, she cannot establish the requisite causal connection.

---

can occur through silent acceptance.  If you find that supervisor had authority over subordinate and that supervisor actually knew that subordinate was violating plaintiff's rights but failed to stop subordinate from doing so, you may infer that supervisor acquiesced in subordinate's conduct.") *available at* http://www.ca3.uscourts.gov/civiljuryinstructions/Final-Instructions/june2010/4_Chap_4_2010_June.wpd.

[11]  It is undisputed that neither Plaintiff's pay, nor her formal job title or position has been affected by the alleged retaliatory actions.

In *McKee v. Hart*, the Third Circuit explained,

the key question in determining whether a cognizable
First Amendment claim has been stated is whether the
alleged retaliatory conduct was sufficient to deter a
person of ordinary firmness from exercising his First
Amendment rights . . . . The effect of the alleged
conduct on the employee's freedom of speech need not be
great in order to be actionable, but it must be more
than de minimis.

436 F.3d 165, 170 (3d Cir. 2006) (internal citations and quotations
omitted).

The record evidence fails to establish that the alleged
retaliatory actions were sufficient to deter a person of ordinary
firmness from exercising her First Amendment rights.

With regard to office supplies, Plaintiff testified that she
has requested but has not received basic office supplies such as
ink for her copier, a fax machine, and a pencil.  (Pl. Dep. p. 75-
84)  She also testified that she does not have internet access when
other secretaries do.  (Id. at p. 77-78)  However, Plaintiff
testified that she has access to a functional copier and a fax
machine in the building where she works (id. at p. 82, 86)[12], and
did, at some unspecified time after she filed her Tort Claim
Notice, receive "a couple of pencils or pens."  (Id. at p. 84)

With regard to internet access, Plaintiff presents no evidence
that not having internet access has had any negative effect on her,
other than her apparent annoyance that other secretaries have

---

[12]  When asked why Plaintiff does not use the functional
copier in her building she said, "I shouldn't have to.  I should
have one in my office like I used to have."  (Pl. Dep. at p. 83)

internet access.[13]

With respect to Plaintiff's duties as a secretary, she testified that she previously had many responsibilities but now only processes payroll. (Pl. Dep. at p. 18-19, 79, 84)  However, here too, Plaintiff presents no evidence explaining how having less responsibilities at work has negatively affected her.  Plaintiff merely testified that she has "five to six hours" of "free time" a day and has never asked for more work or more responsibilities. (Pl. Dep. at 39-40)

Similarly, Plaintiff presents no evidence as to how her numerous office moves caused her hardship.  For example, the record is completely devoid of any evidence that moving between different Board of Education buildings within the City of Atlantic City had any effect on her commute or other circumstances of her employment.

Additionally, the record does not support a causal connection between almost all of the asserted adverse employment actions and her asserted protected activity because they occurred prior to Plaintiff filing her Tort Claim Notice in 2007.  Plaintiff testified that she has not had internet access since 2005.  (Pl. Dep. at p. 79)  She testified that various job responsibilities were taken away from her in 2004 and 2005 (Id. at p. 19-20, 24-25); and her last office move was in 2005.  (Pl. Dep. at p. 73)

---

[13]  Plaintiff testified that she needs internet access to process custodial work orders, but she also testified that she no longer performs that duty.  (Pl. Dep. at p. 79)

11

In conclusion, the record evidence is insufficient to establish that the alleged retaliatory actions would deter a person of ordinary firmness from exercising their First Amendment rights, and even if the record were not deficient in this manner, the record evidence cannot support a conclusion of causation.

Accordingly, both Caldwell and the Board of Education are entitled to summary judgment on this claim.[14]

### B.

### (1)

As to Caldwell's recording of his phone conversation with Plaintiff, the parties apparently assume that Plaintiff's claim is brought pursuant to the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq., even though that statute is not cited or referenced in the Complaint. The relevant portion of the statute provides,

> Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person:
>
> a. Actual damages, but not less than liquidated damages computed at the rate of $ 100.00 a day for each day of violation, or $ 1,000.00, whichever is higher;

---

[14] Also, there is no record evidence supporting a claim municipal liability; therefore the Board of Education is entitled to summary judgment for this reason as well.

    b. Punitive damages; and

    c. A reasonable attorney's fee and other litigation costs reasonably incurred.

N.J.S.A. 2A:156A-24.

    However, the statute also provides,

    [i]t shall not be unlawful under this act for:

    . . .

    A person not acting under color of law to intercept a wire, electronic or oral communication, where such person is a party to the communication . . . unless such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act.

N.J.S.A. 2A:156A-4d.

    Caldwell reasons that because he was a party to the communication, and his purpose was not to commit a tortious or criminal act, but rather to clear his name, he is not liable under the New Jersey Wiretapping statute.  The undisputed evidence supports the conclusion that Caldwell was a party to the communication, and the Court agrees that a reasonable factfinder could not conclude that Caldwell recorded his conversation with a tortious or criminal purpose.[15]  However, one element remains: was

---

    [15] The interceptor's *purpose* is the dispositive factor, not whether the *means he employs* is tortious or criminal.  *Caro v. Weintraub*, 2010 U.S. App. LEXIS 16755, at *10-11 (2d Cir. Aug. 13, 2010) (discussing the relevant section of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2521, explaining, "[i]ntent may not be inferred simply by demonstrating that the

Caldwell acting "under color of law" when he recorded the conversation?[16]

"Under color of law" is not defined by the wiretapping statute, nor has the Court's research uncovered any New Jersey case law interpreting this phrase. However, federal case law interpreting the nearly identical federal wiretapping statute provides guidance.

In *Thomas v. Pearl*, Thomas, a nationally-recruited high school basketball player, sued a college basketball assistant coach after learning that the coach had secretly recorded their telephone conversations. 998 F.2d 447, 449-50 (11th Cir. 1993).[17] The coach

_____

intentional act of recording itself constituted a tort. A simultaneous tort arising from the act of recording itself is insufficient.").

New Jersey courts have frequently looked to the Omnibus Crime Control and Safe Streets Act when adjudicating cases under the New Jersey statute. *See Cacciarelli v. Boniface*, 325 N.J. Super. 133, 137 (Ch. Div. 1999) ("Clearly the New Jersey Act was modeled after the federal statute and case law in New Jersey has found that our legislature intended when it enacted the state act to follow the federal statute.") (citing *State v. Fornino*, 223 N.J. Super 531, 544 (App. Div. 1988)); *Pascale v. Carolina Freight Carriers Corp.*, 898 F. Supp. 276, 281 (D.N.J. 1995) ("New Jersey courts have looked to constructions of the federal act when interpreting the New Jersey wiretap statute.") (citing *State v. Lane*, 279 N.J. Super. 209 (App. Div. 1995) and *M.G. v. J.C.*, 254 N.J. Super. 470 (Ch. Div. 1991)).

[16] The color of law analysis under the wiretapping statute differs from the analysis under § 1983. *Thomas v. Pearl*, 998 F.2d 447, 450 (11th Cir. 1993). "Under color of law" is interpreted more narrowly under the wiretapping statute. *Id.* at 450-52.

[17] *Rehear'g denied,* 1993 U.S. App. LEXIS 19660 (7th Cir. July 30, 1993); *cert. denied*, 510 U.S. 1043 (1994).

was employed by the University of Iowa, a state university.  *Id.* at 449-50.

Interpreting 18 U.S.C. § 2511(2)(d)[18], the court held that to satisfy the color of law element, "there must be some logical and reasonable connection between the government worker's job description and eavesdropping;" for example, "law enforcement officers acting within the scope of their authority."  *Thomas*, 998 F.2d at 451.  Applying the standard to the case before it, the Court observed, "[s]ociety simply has no expectation that basketball coaches will wiretap their conversations with high school recruits."  *Id.*  The court ultimately concluded that the coach was not liable under the federal wiretapping statute because he was not acting under color of law, and did not commit a tort or crime in recording the conversations.  *Id.* at 452-53.[19]

This case is analogous to *Thomas*.  Just as there is no expectation that coaches will wiretap their recruits, there is no expectation that board of education employees will wiretap their secretaries.  As a matter of law, Caldwell did not act "under color

---

[18]  "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).

[19]  The court also held that the coach was not liable under the analogous Illinois wiretapping statute.  *Thomas,* 998 F.2d at 453.

of law," as that term is used in the New Jersey wiretapping statute, simply because he was a municipal employee.  There is no reasonable or logical connection between his eavesdropping and his duties as Director of Operations for the Atlantic City Board of Education.

Accordingly, the Court holds that a reasonable factfinder could only conclude that all elements of N.J.S.A. 2A:156A-4d are present in this case, and Caldwell is not liable under the New Jersey Wiretapping statute.  Summary judgment will be granted to Caldwell on this claim.

Also, as there is no individual liability, the Board of Education can have no *respondeat superior* liability.  Accordingly, its Motion for Summary Judgment on this claim will be granted as well.

### (2)

Plaintiff also asserts a common law tort claim for intrusion upon seclusion.  New Jersey has adopted the Restatement definition of intrusion upon seclusion:

> 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'

*N.O.C., Inc. v. Schaefer,* 197 N.J. Super. 249, 254 (Law Div. 1984) (quoting Restatement (Second) of Torts § 652B).

16

The record evidence cannot support a conclusion that Caldwell intruded into Plaintiff's private conversation because he was a party to that conversation.  Plaintiff's claim differs from the traditional wiretapping scenario, *compare* Restatement § 652B, comment b, because her claim is not against a third party interloper who heard a conversation he otherwise would not have heard.  As the Restatement makes clear, "the intrusion itself makes the defendant subject to liability."  Restatement § 652B, comment b.  Here, there simply was no intrusion because Plaintiff was knowingly speaking with Caldwell.  The fact that Caldwell secretly recorded the conversation does not-- absent publication, which would be a separate tort-- constitute an invasion.[20]  Thus, Caldwell is entitled to summary judgment on the intrusion upon seclusion claim.  The Board of Education's motion for summary judgment will also be granted for the same reasons it is entitled to summary judgment on the wiretapping claim.

---

[20]  Alternatively, even if there was an intrusion, the Court concludes that Caldwell's actions would not be highly offensive to a reasonable person.  Whether his actions are highly offensive "turns on [Plaintiff's] reasonable expectation of privacy.  A 'reasonable person' cannot conclude that an intrusion is 'highly offensive' when the actor intrudes into an area in which the victim has either a limited or no expectation of privacy." *White v. White*, 344 N.J. Super. 211, 222 (Ch. Div. 2001). Plaintiff could have very little expectation of privacy *vis a vis* Caldwell.  She knew she was speaking with him.  Therefore, any intrusion would not be highly offensive.

**C.**

While Plaintiff makes no argument in her brief, the Court interprets her Complaint as asserting an LAD retaliation claim mirroring her First Amendment retaliation claim.  Plaintiff seems to assert that Caldwell filed his defamation suit, and created a hostile work environment, in retaliation for her filing her Tort Claim Notice.[21]

The LAD provides,

It shall be an unlawful employment practice . . .

a.  For an employer, because of the race, creed, color, national origin, ancestry, age, . . . sex, gender identity or expression, [or] disability . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

. . .

d.  For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12a & d.

As the statute states, protected activity includes "opposing

_____

[21]  Plaintiff specifically states that her present claims are not based on Caldwell allegedly exposing himself to Plaintiff in 2002.  Any such claim would be time-barred.  *See Montells v. Haynes*, 133 N.J. 282 (1993) (establishing a two-year statute of limitations for LAD claims).

practices or acts forbidden under [the statute]" as well as filing a complaint.  Id.  However, the New Jersey Supreme Court has made clear that in order to receive protection, Plaintiff must take those actions in good faith.  In *Carmona v. Resorts Int'l Hotel, Inc.*, the Court wrote,

> we hold that, in a case in which a plaintiff alleges retaliation under the LAD, N.J.S.A. 10:5-12d, the plaintiff bears the burden of proving that his or her original complaint-- the one that allegedly triggered his or her employer's retaliation-- was made reasonably and in good faith. The obverse also holds true: an unreasonable, frivolous, bad-faith, or unfounded complaint cannot satisfy the statutory prerequisite necessary to establish liability for retaliation under the LAD.

189 N.J. 354, 373 (2007).

In this case, the Court holds that the record evidence does not sufficiently support a conclusion that Plaintiff's Tort Claim Notice was drafted and filed in good faith.  The undisputed record evidence demonstrates that Plaintiff's claims based on Caldwell allegedly exposing himself were already time-barred when she filed the Tort Claim Notice-- the incidents allegedly occurred in October, 2002, and Plaintiff did not file her Tort Claim Notice until November, 2007.[22]  That fact, alone, of course, would not necessarily preclude a finding of good faith; a lay person would not be expected to know the applicable statute of limitations.  However, in this case, the record is clear: Plaintiff's Tort Claim

---

[22] As noted *supra* at n. 21, the claim is subject to a two-year statute of limitation.

19

Notice was drafted by her attorney, who is charged with knowledge of the applicable two-year statute of limitations.[23] (Plaintiff has never argued that the statute of limitations was tolled, and the record does not support any tolling argument.)

Moreover, Plaintiff never filed a lawsuit based on the allegations in the Tort Claim Notice; she admits that she never complained to anyone about the alleged incidents until filing the notice in 2007 (Pl's Dep. at p. 66-68, 70-71); and as a legal matter, Plaintiff did not need to file a Tort Claim Notice in order to pursue her sexual harassment claims. *See Fuchilla v. Layman,* 109 N.J. 319, 337-38 (1988) (holding that claims based on asserted violations of the LAD and § 1983 are not subject to the New Jersey Tort Claims Act).[24]

These facts, when considered together in the context of this case, simply do not sustain Plaintiff's burden of establishing that her Tort Claim Notice was drafted and filed in good faith. Accordingly, the Defendants' Motions for Summary Judgment will be

---

[23] *Cf. Napier v. Thirty or More Unidentified Federal Agents, etc.,* 855 F.2d 1080, 1091 (3d Cir. 1988) (affirming award of Rule 11 sanctions against an attorney who, among other things, filed "a claim clearly precluded by the statute of limitations.").  Of course, the Tort Claim Notice at issue here was not subject to Rule 11 or the analogous New Jersey Rule because it was not a pleading filed with any court.

[24] Caldwell's defamation complaint alleges that Plaintiff and her counsel gave the notice to the *Atlantic City Press*, but Plaintiff and her counsel deny having anything to do with the newspaper receiving a copy of the notice.

granted.[25]

## IV.

For the reasons stated above, Defendants' Motions for Summary Judgment as to liability will be granted.  Defendant Nickles' Motion for Summary Judgment as to punitive damages will be dismissed as moot.  An appropriate Order accompanies this Opinion.


Dated: September 7, 2010

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

[25]  Additionally, Plaintiff's hostile work environment retaliation claim fails for similar reasons articulated in Section III., A., 3.  The record does not support a conclusion that the alleged retaliatory actions (other than the defamation lawsuit) would dissuade a reasonable worker from making a charge of discrimination, *see Roa v. Roa*, 200 N.J. 555, 575 (2010) (adopting for LAD retaliation cases, the *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) standard in Title VII retaliation cases); nor does the record demonstrate the requisite causal connection.